IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FREDERICK J. BRENNAN,
    *Plaintiff*,

    v.

DELUXE CORPORATION,
    *Defendant*.

Civil Action No. ELH-18-2119

## MEMORANDUM OPINION

This employment discrimination case is brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), codified, as amended, at 42 U.S.C. § 2000e *et seq*. Plaintiff Frederick J. Brennan has sued his former employer, Deluxe Corporation ("Deluxe"), alleging that he was disciplined and then terminated from his job because of discrimination based on religion. ECF 1-4 (the "Complaint").[1]

The Complaint contains three counts: "Discrimination on the Basis of Plaintiff's Christian Religion" (Count One); "Failure to Accommodate Plaintiff's Christian Religious Belief" (Count Two); and "Failure to Engage in Interactive Process to Arrive at an Accommodation (Count Three). *Id*.[2] Brennan seeks reinstatement and damages in excess of $75,000, including back pay,

---

[1] Plaintiff filed suit in the Circuit Court for Baltimore County, Case No. 03-C-18-5335. *Id*. Deluxe timely removed the action to this Court on the basis of federal question jurisdiction (28 U.S.C. § 1331) and diversity jurisdiction (28 U.S.C. § 1332). ECF 1 (the "Notice of Removal").

[2] The Complaint does not assert any claims under the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code (2014 Repl. Vol., 2018 Supp.), § 20–606 of the State Government Article ("S.G."), which "is the state analogue of Title VII." *Alexander v. Marriott Int'l, Inc.*, RWT-09-2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011). Maryland courts interpreting MFEPA have often found federal cases arising under Title VII to be persuasive authority. *See, e.g., Taylor v. Giant of Maryland, LLC*, 423 Md. 628, 652, 33 A.3d 445, 459 (2011); *Chappell v. S. Md. Hosp., Inc.*, 320 Md. 483, 494, 578 A.2d 766 (1990); *Md. Shipbuilding & Drydock Co., Inc. v. Md. Comm'n on Human Rel.*, 70 Md. App. 538, 545-50, 521 A.2d 1263 (1987); *Edgewood Mgmt.*

front pay, and recovery for "non-economic damages such as, but not limited to, emotional distress, humiliation, embarrassment, loss of enjoyment of life." *Id*. ¶ 16. He also seeks attorney's fees and costs. *Id*.

Deluxe has moved to dismiss the Complaint (ECF 9), supported by a memorandum of law (ECF 9-2) (collectively, the "Motion") and exhibits. ECF 9-3 – ECF 9-6. Pursuant to Fed. R. Civ. P. 12(b)(6),[3] Deluxe argues that the Complaint fails to state claims of religious discrimination and failure to provide religious accommodation. *See* ECF 9-2 at 1. Brennan opposes the Motion (ECF 12, the "Opposition") and has filed an exhibit. ECF 12-1. Deluxe has replied. ECF 15 (the "Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion in part and deny it in part.

## I.     Factual Background

On or about July 13, 2004, Brennan, a Christian, was hired by Payce, Inc. ("Payce") as a Software Engineer. ECF 1-4, ¶ 1. Prior to 2017, Payce "became a subsidiary and an affiliate of" Deluxe. *Id*. ¶ 2. Deluxe then "took control of day to day operations" at Payce, "including the management of Payce employees." *Id*.

---

*Corp. v. Jackson*, 212 Md. App. 177, 200 n.8, 66 A.3d 1152, 1166 n.8 (2013). Md. 469, 914 A.2d 735 (2007)); *see also Blakes v. City of Hyattsville*, 909 F. Supp. 2d 431, 444 (D. Md. 2012).

[3] Deluxe also filed its Motion pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction. *See* ECF 9. However, the Motion does not contest or even discuss subject matter jurisdiction. *See* ECF 9-2. As noted, jurisdiction is founded on diversity and federal question. And, plaintiff has satisfied Title VII's exhaustion requirement. ECF 1-4, ¶¶ 14, 15; *see also Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407-06 (4th Cir. 2013). Therefore, I shall address only the grounds under Fed. R. Civ. P. 12(b)(6).

Deluxe "is a Minnesota Corporation which, at all times relevant, conducted business in Maryland." *Id*. ¶ 3. According to plaintiff, Deluxe "is a joint employer" with Payce, "because . . . it exercised control over [Brennan's] compensation, hours and terms of employment." *Id*. ¶ 4. Among other things, Deluxe required Payce to follow "Deluxe's Code of Ethics and Business Conduct." *Id*. ¶ 5.

Of relevance here, Deluxe "required employees to take an online Ethics Compliance course," which "required" employees to respond to "multiple choice questions." *Id*. ¶ 6. The course "was structured to accept only those responses acceptable to" Deluxe. *Id*. ¶ 7. "When a response was entered which [wa]s not acceptable to" Deluxe, "the Ethics Compliance course refused to allow the employee to continue to the next question." *Id*. Nor could an employee "skip any questions." *Id*.

On or about March 24, 2017, Brennan "proceeded to take the Ethics Compliance Course." *Id*. ¶ 8. "When Plaintiff entered his choices to [the] question labeled 'Bad Behavior,' relating to transgender issues, the course did not agree with Plaintiff's choices." *Id*. ¶ 9. As a result, "the course refused to allow the Plaintiff to continue, and did not allow Plaintiff to skip the question." *Id*.

Brennan avers that his "Christian religious beliefs did not allow him to choose the answers required by Defendant's Ethics Compliance course." *Id*. ¶ 10. Thereafter, he "requested that he be excused from completing the Ethics Compliance course as an accommodation to his religious beliefs." *Id*. ¶ 11. Deluxe denied Brennan's request. *Id*. ¶ 12.

Moreover, on January 19, 2018, Deluxe "advised [Brennan] that he would receive a 1% salary reduction as a disciplinary action for failing to complete the Ethics Compliance course." *Id*. Thereafter, on April 20, 2018, Deluxe "directed" Payce to "terminate the Plaintiff." *Id*. ¶ 13.

Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on February 5, 2018. *Id.* ¶ 14. And, on February 28, 2018, "the EEOC issued a Dismissal and Notice of Suit Rights." *Id.* ¶ 15.

Additional facts are included in the Discussion.

## II.     Legal Standards

### A.     Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to

satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555.

To be sure, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam). Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint is insufficient if it provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Belmora, LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th

Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The purpose of the rule is to ensure that defendants are "given adequate notice of the nature of a claim" made against them. *Twombly*, 550 U.S. at 555-56 (2007). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

To survive a motion to dismiss, a complaint, relying on only well-pled factual allegations, must state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). To determine whether a complaint has crossed "the line from conceivable to plausible," a court must employ a context-specific inquiry, drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at 679-80.

## B.    Exhibits

Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment.  *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).   In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ."  *Goines*, 822 F.3d at 166 (citations omitted); *see also U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).  A court may also take judicial notice of matters of public record.  *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it."  *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)).  "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper."  *Goines*, 822 F.3d at 167.  Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true."  *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint

and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *petition for cert. filed*, No. 17-492 (Oct. 3, 2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

To its Motion, Deluxe appended plaintiff's Complaint (ECF 9-3) and several exhibits: the "Dismissal and Notice of Rights" issued by the EEOC on February 28, 2018 (ECF 9-4); the "Notice of Charge of Discrimination" filed by Brennan on February 5, 2018, and signed by EEOC Baltimore Field Office Director Rosemarie Rhodes on June 19, 2018 (ECF 9-5); an excerpt of Section 12 of the EEOC Compliance Manual (the "Manual"), dated July 22, 2008, titled "Religious Discrimination" (ECF 9-6 at 2-6); and an excerpt of EEOC's "Questions and Answers: Religious Discrimination in the Workplace" (ECF 9-6 at 7-8).

The Manual states, in relevant part, ECF 9-6 at 5:

> [A]n employer is required, absent undue hardship to excuse an employee from compulsory personal or professional development training where it conflicts with the employee's sincerely held religious beliefs or practices. There may be cases, however, where an employer can show that it would pose an undue hardship to provide an alternative training or to excuse an employee from any part of a particular training, even if the employee asserts it is contrary to his religious beliefs to attend.

The Manual also includes an example scenario, titled "Religious Objection to Training Program – Employee Need Not Be Excused." *Id*. at 5. EEOC advises that it would be "an undue hardship" to the employer excuse an employee who "asks to be excused from the portion of the

training on sexual orientation discrimination" because the employee "sincerely believes" it is "immoral and sinful based on her religion." *Id*. at 5-6.

The EEOC Questions and Answers excerpt includes the following question: "What if an employee objects on religious grounds to an employer-sponsored program?" *Id*. at 8. In response, EEOC advises: "It would be an undue hardship to excuse an employee from training, for example, where the training provides information on how to perform the job, or how to comply with equal employment opportunity obligations, or on other workplace policies, procedures, or legal requirements." *Id*.

In my view, the Dismissal and Notice of Rights (ECF 9-4) and the Notice of Charge of Discrimination (ECF 9-5) are incorporated into the Complaint or integral to it, because they are the foundational basis of plaintiff's suit and are referenced explicitly in the Complaint. *See* ECF 1, ¶¶ 14, 15. In contrast, the Manual (ECF 9-6 at 2-6) and the EEOC Questions and Answers (ECF 9-6 at 7-8) are not integral to the Complaint. Nevertheless, Deluxe urges "that the Court can properly take judicial notice of such materials under Fed. R. Evid. 201 without converting Defendant's Motion to Dismiss into a motion for summary judgment." ECF 15 at 3.

Indeed, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips*, 572 F.3d at 180. Pursuant to Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." And,

courts may take judicial notice of publicly available records without converting a motion to dismiss to a motion for summary judgment. *See, e.g.*, *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) ("[C]ourts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment.").

The Manual (ECF 9-6 at 2-6) and the EEOC Questions and Answers (ECF 9-6 at 7-8) are relevant public records. As such, I shall take judicial notice of these exhibits.

In addition, Deluxe requests that I consider "the actual questions and answers that are set forth in the training materials at issue," because "these materials form the basis of Plaintiff's claim." ECF 15 at 3. However, Deluxe does not attach a copy of the materials as a separate exhibit. Instead, in the memorandum of law (ECF 9-2) in support of the Motion (ECF 9), Deluxe inserts a handful of questions that were allegedly included in the training materials. ECF 9-2 at 7-9. Because the questions and answers were not properly submitted as an exhibit, it would be inappropriate to consider them at this stage.

To his Opposition, Brennan appended an email exchange between himself and Petra Ott, Deluxe's human resources manager. ECF 12-1 at 3-5. In an email from Brennan to Ott dated May 24, 2017, sent at 2:29 p.m., Brennan stated, *id*. at 5:

> I was just in the process of taking the required '2017 Workplace Harassment: Employee Edition' and I ran into at least two questions that I find offensive and discriminatory towards my faith in God; I find it somewhat ironic that one of the protected categories mentioned is 'religion', and yet the course forces you to answer a certain way on the questions, or it will not let you continue. This is basically tantamount to brainwashing, and I don't accept that. I can provide you with further details as to why the questions and the presumed answers are offensive to me, but I am hoping that won't be necessary.

At 2:39 p.m. on May 24, 2017, Ott responded by email that she was leaving work the next day on "PTO," or paid time off, and that she would "return to [Brennan's] question" when she was

"back on June 6th." *Id.* In an email of June 15, 2017, sent at 5:00 p.m., Ott wrote to Brennan, stating, *id.* at 4:

> Deluxe is an all-inclusive employer. While we recognize that each of our employees is unique, and that each employee may hold different views, values and opinions about the world around us, the Ethics and Compliance courses are designed to reflect our policy of inclusiveness and non-discrimination.

> It is important that as an employee of Deluxe you recognize that we do not expect you to change your values or beliefs but rather, as an employee, your behaviors at work are expected to uphold Deluxe's standards and values.

By email of June 16, 2017, sent at 9:42 a.m., Brennan stated that the Ethics Compliance course included a question about a transgender employee, "Alex," who is transitioning from male to female, and it asked: "'Which of Alex's coworkers' behavior would likely constitute harassment?'" *Id.* at 3. Brennan stated, *id.*: "The answers that the course sees as 'correct' are contradictory to my faith in God, and I refuse to be forced to answer a question in a way that would make me compromise my faith in God." Further, he espoused his religious beliefs, stating, *id*:

> I am a born-again Christian who believes in the one and only God of the universe, the God who has revealed Himself to be God the Father, God the Son (Jesus), and the Holy Spirit. He created male and female, and although someone can cut off body parts and inject themselves with hormones, they can never become a different sex. Now as I understand it, Deluxe's policy requires employees to address a person using pronouns reflecting the sex that the person identifies him/herself with, and not necessarily the sex they were born as; For example, in the hypothetical example in the course, Alex is a man but desires to become a woman, so in that case Deluxe would expect employees to use 'her' referring to Alex, and not 'him.'

> Let me be quite clear on this. I will never be following this guideline. If God has created someone as a man, I will use the pronoun 'him' to refer to that person, or if God created someone as a woman, I will use the pronoun 'her' to refer to that person. Bruce Jenner was created a man. He can cut things off and do whatever procedure he wants, but he will never become a woman, and I will never address him as such. It is an abomination to the God that created this universe,

> Now of course, Deluxe could decide to reduce my salary if the ethics course is not completed (I believe there was something in the employee handbook about that), or Deluxe could decide to invoke a disciplinary action, or even a termination;

Any such actions would be a clear case of religious discrimination, and a violation of state and federal laws. Quoting the ethics course, 'It is also unlawful to harass or discriminate against another person because of his or her religious beliefs and practices' . . . .

The Complaint explicitly references the foregoing email exchange in requesting that Brennan "be excused from completing the Ethics Compliance course as an accommodation to his religious beliefs." ECF 1-2, ¶ 11. Therefore, the emails are foundational to the Complaint and I may consider them as this stage. *See Zak*, 780 F.3d at 606.

### III.    Discussion

### A.    Title VII

Title VII prohibits an employer, *inter alia*, from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *see Young v. United Parcel Service, Inc.*, ____ U.S. ____, 135 S. Ct. 1338, 1344 (2015); *Strothers v. City of Laurel*, 895 F. 3d 317, 326-27 (4th Cir. 2018); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc); *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014).

Specifically, Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's religion." 42 U.S.C. § 2000e-2. "Religion" is defined to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." *Id*. § 2000e(j). This definition "includes a requirement that an employer 'accommodate' an employee's religious expression." *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017-18 (4th Cir. 1996).

Courts recognize only "two theories in asserting religious discrimination claims," which are "denominated as the 'disparate treatment' and 'failure to accommodate' theories." *Chalmers*, 101 F.3d at 1017. In Count One of the Complaint, Brennan alleges "discrimination on the basis of plaintiff's Christian religion." In Count Two, Brennan claims that Deluxe failed to accommodate his religious belief. Given the two available theories, I shall construe Count One as a religious discrimination claim under the disparate treatment theory. And, I shall construe Count Two as a failure to accommodate claim.

### B.      Methods of Proof

In general, *at trial*, a plaintiff "may establish a discrimination claim under Title VII through two avenues of proof." *Thomas v. Delmarva Power & Light Co.*, 715 F. App'x 301, 302 (4th Cir. 2018) (per curiam) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)). Of course, this case is at a preliminary stage—not trial. However, reference to the avenues of proof serve to inform a court's evaluation of a motion to dismiss or for summary judgment. *Cf. Pettis v. Nottoway Cty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014) (stating that a plaintiff asserting racial discrimination "may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas* . . . .").

The plaintiff's first avenue is to offer "'direct or indirect'" evidence of discrimination under "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997). The plaintiff's second avenue is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Young*, 135 S. Ct. at 1345 (construing the Pregnancy

Discrimination Act); *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (discussing the *McDonnell Douglas* framework).

The *McDonnell Douglas* proof scheme is "a procedural device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted). Under the *McDonnell Douglas* approach, the "ultimate burden of persuasion [at trial] never 'shifts' from the plaintiff," who must prove intentional unlawful discrimination. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 n.2 (4th Cir. 1989) (citation omitted). Notably, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

If the plaintiff chooses to proceed at trial under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Central Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017). Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff is generally required to show that the employer took adverse action against an applicant "under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

If a plaintiff establishes a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Hurst v. District of Columbia*, 681 F. App'x 186, 189-90 (4th Cir. 2017) (per curiam). "If the defendant carries this burden of production, the presumption raised by

the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11. The plaintiff must then prove, by a preponderance of evidence, "that the [employer's] proffered reason was not the true reason for the employment decision" and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Adams v. Trustees of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).

Conversely, if the defendant does not submit evidence of a legitimate basis for its actions, the factfinder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978). And, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original). This is because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3; *see Burdine*, 450 U.S. at 255 n.8 ("[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.").

## C. Count One: "Discrimination on the Basis of Plaintiff's Christian Religion"

In a disparate treatment case, the elements of a prima facie case of discrimination under Title VII are: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citation omitted), *aff'd*, 566 U.S. 30 (2012). Of significance here, "an employee must demonstrate that the employer treated [him] differently than other employees because of [his] religious *beliefs*. *Chalmers*, 101 F.3d at 1017 (emphasis in original). In support, the plaintiff might allege "that the employer treated the employee more harshly than other employees of a different religion, or no religion, who had engaged in similar conduct." *Id*.

In its Motion, Deluxe contends that "the Complaint fails to include any specific allegation as to what religious beliefs purportedly served as the basis for the alleged discrimination against him, other than to make the conclusory allegations that 'Plaintiff's Christian religious beliefs did not allow him to choose the answers required by Defendant's Ethics Compliance course.'" ECF 9-2 at 5 (citing ECF 1-2, ¶ 10). In addition, Deluxe asserts that "the Complaint fails to identify with any specificity the questions and answers at issue which Plaintiff alleges he refused to answer, purportedly because of his religious beliefs, and how the required responses infringed on those beliefs." ECF 9-2 at 6. Furthermore, Deluxe contends that plaintiff's "allegations recognize Defendant's legitimate, non-discriminatory reason for the alleged disciplinary action against Plaintiff (i.e., a 1% salary reduction for his failure to complete the Ethics Compliance Course), and the Complaint fails to allege any facts to demonstrate that such [action] was pretextual and motivated in any way by Plaintiff's asserted religious beliefs." *Id*.

In support, Deluxe relies on *Peterson v. Hewlett Packard Co.*, 358 F.3d 599, 605 (9th Cir.

2004). *See* ECF 9-2 at 6; ECF 15 at 2-3. In that case, the Ninth Circuit granted summary judgment to the defendant with respect to the plaintiff's claim of religious discrimination because the plaintiff "offered *no* evidence, circumstantial or otherwise, that would support a reasonable inference that his termination was the result of disparate treatment on account of religion." *Peterson*, 358 F.3d at 605 (emphasis in original). Viewing the record in the light most favorable to the plaintiff, the court found that it was evident that the plaintiff was terminated "because he violated the company's harassment policy by attempting to generate a hostile and intolerant work environment and because he was insubordinate in that he repeatedly disregarded the company's instructions to remove the demeaning and degrading postings from his cubicle." *Id*.

However, this case is not at the summary judgment stage, and the standard relied upon by the Ninth Circuit in *Peterson* is inapplicable here. As discussed, *supra*, to survive a motion under Fed. R. Civ. P. 12(b)(6), "[a] complaint 'need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Coleman*, 626 F.3d at 190 (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

In his Opposition, Brennan emphasizes that he "is not required to set forth a prima facie case." ECF 12 at 3. In his view, the Complaint is sufficient because he alleges that "he had a *bona fide* religious belief mandated by his Christian faith, that he was unable to fulfill a job requirement due to his religious convictions, namely the completion of the Ethics & Compliance course, which motivated the Defendant to reduce his pay and terminate him." *Id*.

To be sure, Brennan is not required to set forth facts in the Complaint that constitute a prima facie case. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002). In *Swierkiewicz*, 534 U.S. at 510, the Supreme Court explained that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." The Court stated that it had

"never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Thus, the Court said: "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515; *see also McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied*, 136 S. Ct. 1162 (2016).

But, plaintiff must state allegations that give rise to a plausible claim for relief. *Coleman*, 626 F.3d at 190. In particular, "the complaint must 'state a plausible claim for relief' that 'permits the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Id.* (alterations omitted) (citing *Iqbal*, 556 U.S. at 679). The Fourth Circuit has made clear that "while a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Coleman*, 626 F.3d at 190 (internal citation omitted) (citing *Twombly*, 550 U.S. at 555); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

Here, Brennan alleges that he "held a *bona fide* religious belief which prevented him from responding to the transgender question on the Ethics Compliance course in the manner that the Defendant required." ECF 1-4, ¶ 18. And, he claims that Deluxe discriminated against him "on the basis of [his] Christian religion" by "reducing [his] salary" and almost a year later, by "terminating him because he would not complete the Ethics Compliance course . . . ." *Id.* ¶ 19; *see also id.* ¶¶ 8, 12, 13.

The Fourth Circuit decision in *Coleman*, 626 F.3d 187, is instructive. In *Coleman*, the plaintiff, an African American who was terminated for allegations of steering contracts to vendors in which he had an interest, alleged that he "was treated differently as a result of his race than

whites." *Id*. at 189. The plaintiff specifically identified a white supervisor who was not disciplined despite also having "outside business involvements." *Id*. at 191 (internal quotation marks omitted). Nevertheless, the Fourth Circuit affirmed the district court's ruling that the complaint failed to establish "a plausible basis for believing [plaintiff and the comparator] were actually similarly situated or that race was the true basis for [plaintiff's] termination." *Id*. (footnote omitted). The Court emphasized that the complaint did "not even allege . . . that any impropriety was comparable to the acts [plaintiff] was alleged to have committed." *Id*. "Absent such support," it concluded, "the complaint's allegations of race discrimination do not rise above speculation." *Id.*

Brennan took the ethics course on March 24, 2017. He maintains that Deluxe intentionally discriminated against him on the basis of religious by reducing his salary on January 19, 2018, and then terminating him on April 20, 2018. But, Brennan has asserted no facts that suggest disparate treatment; he does not allege that a similarly situated Deluxe employee was treated differently. Nor does he allege that, at the relevant time, he was performing his duties in a satisfactory manner.

In my view, Brennan has failed to state a religious discrimination claim based on disparate treatment. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Therefore, I shall grant the Motion with respect to Count One.

### D. Count Two: "Failure to Accommodate Plaintiff's Christian Religion Belief"

In Count Two, Brennan claims that Deluxe has "failed to make any reasonable attempt to accommodate the Plaintiff's religious belief." ECF 1-4, ¶ 23. He also contends that "[i]t would not have been an undue burden on the Defendant to accommodate" such belief. *Id*. ¶ 22.

Under Title VII, 42 U.S.C. § 2000e(j), "an employer has a 'statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an

undue hardship.'" *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)). To state a prima facie failure-to-accommodate claim, an employee must allege that: "'(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement.'" *U.S. Equal Emp't Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017) (citation omitted), *cert. denied*, ___ U.S. ____ 138 S. Ct. 976 (2018); *see also E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, ___ U.S. ____, 135 S. Ct. 2028, 2033 (2015) (clarifying that "the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an [employee's] religious practice, confirmed or otherwise, a factor in employment decisions").

"Unlike disparate treatment, under a failure-to-accommodate theory[,] 'an employee can establish a claim even though she cannot show that other (unprotected) employees were treated more favorably or cannot rebut an employer's legitimate, non-discriminatory reason for her discharge.'" *Abeles v. Metro. Wash. Airports Auth.*, 676 F. App'x 170, 176 (4th Cir. 2017) (citing *Chalmers*, 101 F.3d at 1018). To that end, "an employer must, to an extent, actively attempt to accommodate an employee's religious expression or conduct even if, absent the religious motivation, the employee's conduct would supply a legitimate ground for discharge." *Chalmers*, 101 F.3d at 1018.

In this case, plaintiff satisfies each element of a prima facie failure-to-accommodate claim. First, in an email to Ott on June 16, 2017, Brennan alleged that he holds a bona fide Christian belief that God "created male and female, and although someone can cut off body parts and inject themselves with hormones, they can never become a different sex." ECF 12-1 at 3. And, this

belief "prevented him from responding to the transgender question on the Ethics Compliance course in the manner that the Defendant required." ECF 1-4, ¶ 18. In Brennan's words: "The answers that the course sees as 'correct' are contradictory to my faith in God, and I refuse to be forced to answer a question in a way that would make me compromise my faith in God." ECF 12-1 at 3.

Second, Brennan informed Deluxe of his belief. On March 24, 2017, the same day that plaintiff took the Ethics Compliance course, he notified Ott that, while taking the course, he "ran into at least two questions that [he] f[ou]nd offensive and discriminatory towards [his] faith in God." ECF 12-1 at 5.

Third, Deluxe disciplined Brennan for failing to complete the course by reducing his salary. *See* ECF 1-4, ¶ 19; ECF 9-2 at 3.

In response, as a legitimate non-discriminatory reason, Deluxe proffers that excusing Brennan from the course would have been "unduly burdensome . . . because of the Company's obligations to ensure equal employment opportunities and equal treatment for all of its employees." ECF 9-2 at 7. According to Deluxe, "An employer's duty to provide a reasonable accommodation does not require an employer to accommodate an employee's religious beliefs if so doing would result in discrimination against his co-workers or deprive them of contractual or other statutory rights." *Id*. at 12. In support of this contention, it cites a number of cases in which courts have found that Title VII protects transgender employees from discrimination based upon his or her gender identity. *Id*. at 11. *See, e.g., Squire v. Fedex Freight, Inc.*, MJG-17-3597, 2018 WL 3036474, *11-12 (D. Md. June 19, 2018) (finding that the plaintiff presented a plausible claim of Title VII sex discrimination based on his sexual orientation and gender); *M.A.B. v. Bd. of Educ. of Talbot Cty.*, 286 F. Supp. 3d 704, 715 (D. Md. 2018) (concluding that in the context of a

transgender plaintiff, "allegations of gender stereotyping are cognizable as sex-discrimination claims under Title VII"); *Finkle v. Howard Cty.*, 12 F. Supp. 3d 780, 788 (D. Md. 2014) (ruling that the plaintiff's claim that she was discriminated against "because of her obvious transgendered status" was a cognizable claim of sex discrimination).

Further, Deluxe emphasizes that under the MFEPA, "the State of Maryland prohibit[s] discrimination against employees on the basis of gender identity." ECF 9-2 at 10 (citing S.G. §§ 20–602, 20–606). In addition, it references, as guidance, excerpts of the EEOC Compliance Manual (ECF 9-6 at 2-6) and EEOC Questions and Answers (ECF 9-6 at 7-8). Of significance here, the EEOC advises, ECF 9-6 at 8: "It would be an undue hardship to excuse an employee from training, for example, where the training provides information on how to perform the job, or how to comply with equal employment opportunity."

In light of Maryland and federal law and EEOC guidance, Deluxe concludes: "Defendant reasonably required its employees to complete the training at issue. . . . Defendant's training did not ask Plaintiff to change his religious beliefs; rather; it asked him to acknowledge his understanding of anti-discrimination and anti-harassment laws and corresponding workplace policies." ECF 9-2 at 16.

In his Opposition, Brennan does not attempt to rebut the legitimate, non-discriminatory reason proffered by Deluxe. Rather, he argues that the question of "whether accommodating the Plaintiff's religious beliefs is an undue burden on the Defendant should not be considered at this point because to do so would require the Court to weigh the merits of Defendant's contentions." ECF 12 at 4. Moreover, he asserts that "the Court, at this point, cannot entertain Defendant's assertions because it is required to view the allegations of the complaint in the light most favorable to the Plaintiff." *Id*. at 5.

Although Brennan does not attempt to refute Deluxe's proffered legitimate, non-discriminatory reason, his failure-to-accommodate claim stands at this juncture. *See, e.g., Abeles*, 676 F. App'x at 176; *Chalmers*, 101 F.3d at 1018. As discussed, *supra*, he satisfies each element of his prima facie claim. Accordingly, I shall deny the Motion as to Count Two.

**E.**      **Failure to Engage in Interactive Process to Arrive at Accommodation (Count Three)**

As to Count Three, the Complaint alleges that Deluxe's "failure to make a reasonable attempt to accommodate the Plaintiff's religious belief was a violation of its duty to engage the Plaintiff in an interactive process to attempt to arrive at an accommodation." ECF 1-4, ¶ 26. Count Three further asserts: "A reasonable accommodation would have been found if the Defendant engaged in the interactive process required by law." *Id*. ¶ 27.

The claim seems to be a duplicate of Count Two. As such, this claim is subject to dismissal.

## IV.      Conclusion

For the reasons stated above, I shall GRANT the Motion with respect to Counts One and Three. But, I shall DENY the Motion as to Count Two.

An Order follows, consistent with this Memorandum Opinion.


Date: January 18, 2019                         _____/s/_____
                                               Ellen L. Hollander
                                               United States District Judge