**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **FREDERICK J. BRENNAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | Case No. 1:18-cv-02119-ELH |
| | ) | |
| **DELUXE CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Deluxe Corporation ("Defendant" or "Deluxe"), through undersigned counsel and pursuant to Fed. R. Civ. Proc. 56 and Local Rule 105 – 2(c), respectfully submits this Memorandum of Points and Authorities in Support of its Motion for Summary Judgment.

Plaintiff Frederick Brennan's ("Plaintiff" or "Mr. Brennan") sole count of failure to accommodate his religious beliefs under Title VII fails as a matter of law because his request for an accommodation constituted an undue hardship on Deluxe, as it would have placed Deluxe in jeopardy of violating its legal obligations. Plaintiff also cannot establish a *prima facie* case because he cannot demonstrate that the termination of his employment was motivated by his request for a religious accommodation. As a result, and for the reasons explained in detail below, Deluxe is entitled to summary judgment on Plaintiff's claim.

## I.      INTRODUCTION

In May 2017, Mr. Brennan objected to certain questions in Deluxe's annual mandatory Ethics and Compliance Training ("the Training") regarding its non-discrimination and non-

harassment workplace policies. Mr. Brennan specifically objected to questions in the Training that related to the issue of how a transgender employee should be referred to in the workplace (i.e., which gender pronouns to use and/or whether to call someone by their gender-specific name at birth versus a name of the opposite gender) and whether a transgender employee should be able to use the bathroom of his or her present gender.

Mr. Brennan made clear that because of his religious beliefs, he would not complete these sections of the Training. Mr. Brennan also informed Deluxe that he would "never ever be following" at least certain aspects of Deluxe's policy concerning the treatment of transgender employees (e.g., the use of pronouns in relation to a transgender employee).

As demonstrated below, the questions to which Mr. Brennan objected did not require Mr. Brennan to express moral agreement with the requirements of Deluxe's policy on these issues. Moreover, these questions had specifically been included in the Training to ensure that Deluxe met its legal obligations concerning non-discrimination and non-harassment in the workplace, which included Deluxe's ongoing obligations under the terms of a Consent Decree from a prior lawsuit brought by the U.S. Equal Employment Opportunity Commission against Deluxe that featured allegations of discrimination and harassment against a transgender employee.

Deluxe's management explained to Mr. Brennan that its policies were designed to ensure inclusiveness and nondiscrimination, and that the Training was not intended to force Mr. Brennan to change his stated values or beliefs on the issue, but rather, to ensure that all of its employees would comply with its policies in the workplace. Despite this explanation, Mr. Brennan refused to complete the Training. After conferring with Human Resources personnel and legal counsel, Deluxe made the decision to reduce Mr. Brennan's salary by 1%, which was the standard action taken under Deluxe policy for any employee failing to complete the Training.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.  Deluxe Corporation and Mr. Brennan's Employment with Deluxe

1.    Deluxe is a Minnesota corporation that provides financial and payroll technology services to client companies. Deluxe acquired Payce, Inc., a company also providing payroll technology services, in September 2016. Plaintiff's Complaint, ¶ 1, 3 (Ex. 1).[1]

2.    Mr. Brennan, a former employee of Payce, Inc., was employed by Deluxe as an at-will employee (Software Engineer) from the time of its acquisition of Payce, Inc. through the termination of his employment on April 20, 2018. Mr. Brennan worked at Deluxe's location in Towson, Maryland. Frederick Brennan Dep. 23:10 – 24:5 (Ex. 2).

3.    From at least August 2016 through the date of Mr. Brennan's termination, he was supervised by Mark Vain, Chief Information Officer of Payce and then Deluxe. Ex. 2 (Brennan Dep. 114:16 – 116:19).

### B.  Deluxe's Legal Obligations under Consent Decree

4.    On January 15, 2016, Deluxe entered into a Consent Decree with the U.S. Equal Employment Opportunity Commission ("EEOC") and Plaintiff Brittney Austin. Deluxe Consent Decree (Ex. 3) (Pettengill Dep. Ex. 1)[2]; Kimberly Pettengill Dep. 7:11 – 8:14 (Ex. 4).

---

[1] Exhibits to this Memorandum are introduced by name and subsequently identified as "Ex. 1, 2, etc." Where exhibits relating to deposition testimony are subsequently cited, the deponent's name and deposition transcript pages are included. If an exhibit was authenticated during deposition testimony, reference to the deposition exhibit number is also made.

[2] Pursuant to Fed. R. Evid. 201, Deluxe requests that the Court take judicial notice of the Consent Decree (Ex. 3), which is publicly available in fully executed form via PACER (ECF No. 37) on the docket for the U.S. District Court for the District Court of Minnesota at the following link: https://ecf.mnd.uscourts.gov/cgi-bin/DktRpt.pl?305440504208383-L_1_0-1.  The distinction between the version that is available on PACER (ECF No. 37), and the version submitted as Ex. 3, is that the version on PACER is fully executed by the parties and by the District Court Judge (whereas the version at Ex. 3 is not fully executed).

5.     The Consent Decree was part of a settlement of EEOC Charge No. 540-2011-02711, in which Ms. Austin, who is transgender, accused Deluxe of harassment and discrimination resulting from, *inter alia*, Ms. Austin's transition from male to female during her employment with Deluxe, including Deluxe's failure to allow her to use the gender pronoun and restroom of her choice. Ex. 3; Ex. 4 (Pettengill Dep. 8:15 – 9:8).

6.     The Consent Decree applied to all Deluxe facilities and locations from approximately January 2016 to January 2019. Ex. 3, ¶ 8 – 9.

7.     The Consent Decree required Deluxe to take many remedial measures, specifically regarding harassment and discrimination based on gender identity and toward transgender employees. These measures included the following:

a.     Revising EEO policies to include statements prohibiting discrimination and harassment based on gender identity and transgender status and a "description of the consequences, up to and including termination, that will be imposed upon violators of Defendant's anti-discrimination policies;" Ex. 3, ¶ 25.

b.     Ensuring that "employee requests to change sex-designation or name information in Defendant's internal records, computer and communication systems are fully and promptly complied with." Ex. 3, ¶ 27.

c.     Ensuring that access for transgender employees "to restrooms commensurate with their gender identity will remain unhindered." Ex. 3, ¶ 28.

d.     **Requiring annual training of all employees** on what "may constitute unlawful sex and disability discrimination, including discrimination based on sex-

4

stereotyping, gender-identity, transgender status, and gender dysphoria;" Ex. 3, ¶ 34 (emphasis added).

e. Requiring the training to be **mandatory** and **requiring "penalties for employees who fail to complete the training each year."** *Id.* (Emphasis added.)

f. Requiring Deluxe to file annual reports with the EEOC that include detailed information about any complaints of discrimination or harassment based on gender identity or transgender status received by Deluxe. Ex. 3, ¶ 43.

g. Requiring the posting of a Notice, for the duration of the Consent Decree, in "conspicuous locations" at all Deluxe's facilities that stated, *inter alia*:

"Discrimination against transgender status includes the intentional misuse of gender pronouns when referring to an employee, and refusing to let a transgender employee use a restroom commensurate with his or her gender identity."

Ex. 3 (Consent Decree Exhibit C).

*See also* Ex. 4 (Pettengill Dep. 11:16 – 13:25).

8.   The Consent Decree includes "injunctive relief," stating that Deluxe is "permanently enjoined from engaging in any employment practice which discriminates on the basis of sex, including sex stereotyping, gender identity, and transgender status." Ex. 3, ¶ 22.

9.   The Consent Decree includes language through which the U.S. District Court for the District of Minnesota retains jurisdiction of the matter "for the purposes of compliance with the Decree and entry of such further orders or modifications as may be necessary or appropriate to effectuate equal employment opportunities for employee." Ex. 3, ¶ 45.

10.  The Consent Decree provides for a compliance process by which the EEOC may petition the District Court to enforce the terms of the Consent Decree, and the District Court retains

authority to "order appropriate relief to remedy the non-compliance, including attorneys' fees and appropriate injunctive relief." Ex. 3, ¶ 46.

11.    Deluxe understood compliance with the Consent Decree to be mandatory. Ex. 4 (Pettengill Dep. 9:1-8).

12.    Deluxe generally concluded that if it permitted its employees to intentionally misuse gender pronouns of transgender employees or refused to permit a transgender employee to use a restroom of his or her choice, it would be in violation of the Consent Decree. Ex. 4 (Pettengill Dep. 14:1-11).

13.    As a result of the Consent Decree, Deluxe modified its annual Ethics and Compliance Training ("the Training") for all employees to include two questions relating to the treatment of transgender employees under Deluxe's policies, which Deluxe included in response to the requirements of the Consent Decree. The Training generally covered EEO topics such as harassment, discrimination, and non-retaliation. Ethics and Compliance Training, Pgs. 20 – 22 (Ex. 5) (Pettengill Dep. Ex. 3); Ex. 4 (Pettengill Dep. 15:23 – 17:16).

14.    The first question related to a transgender employee's use of the bathroom of her choice. The second question related to an employee's refusal to address a transgender coworker by her preferred gender pronoun. Ex. 5; Ex. 4 (Pettengill Dep. 15:23 – 17:16); Ex. 2 (Brennan Dep. 67:11 – 69:21).

15.    The Training required employees to identify the correct answers in relation to "laws and company policy" and did not solicit employees' personal opinions on the issues discussed in the Training or ask them to  affirm that they agreed with the content of the Training. Ex. 5, Pgs. 20 – 22.

16.     Deluxe required all employees to complete the Training. If an employee did not complete the Training, the employee's pay would be reduced by 1%, consistent with Deluxe's policy and the Consent Decree's requirement that employees face a penalty for not completing the Training. Julie Loosbrock Dep. 39:12 – 41:09 (Ex. 6); Wendy Arnston Dep. 18:2-12 (Ex. 7); Deluxe Employee Handbook (excerpted), § 2.03 (Ex. 8) (Pettengill Dep. Ex. 2).

17.     To comply with the Consent Decree, Deluxe also modified its Employee Handbook to include prohibitions on the discrimination and harassment on the basis of sexual identity and toward transgender employees. Ex. 8, §§ 2.05, 2.09; Ex. 4 (Pettengill Dep. 14:12 – 15:22).

18.     The EEOC's compliance manual provides guidance regarding the EEOC's position on employee requests for religious accommodation and employer claims of undue hardship. Section 12 "Religious Discrimination," EEOC Compliance Manual (Section 12-IV.C.7, Example 54, footnotes omitted) (Ex. 9).[3]

**C.  Mr. Brennan's Refusal to Complete Certain Sections of the Training**

19.     On May 24 and June 16, 2017, Mr. Brennan informed Petra Ott, Human Resources Business Partner for Deluxe, via email that the Training violated his Christian religion because it required him to answer two questions related to Deluxe's policies against harassment and discrimination of transgender employees that he found to be contrary to

---

[3] The complete compliance manual relating to Religious Discrimination is available through the following link: https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_Toc203359519. Deluxe requests that the Court take judicial notice of the EEOC's Compliance Manual, as it did through its Memorandum Opinion concerning Deluxe's Motion to Dismiss (ECF No. 16, pg. 10).

his religious beliefs. Brennan/Ott Email Correspondence, dated May 24, June 15, June 16, and July 14, 2017 (Ex. 10) (Ott Dep. Ex. 2 (excerpted)).

20.     Mr. Brennan refused to answer the two questions that Deluxe added to the Training to comply with the Consent Decree. Ex. 10; Ex. 5; Ex. 4 (Pettengill Dep. 16:18 – 18:14).

21.     In these emails, Mr. Brennan stated the following regarding Deluxe policy:

[God] created male and female, and although someone can cut off body parts and inject themselves with hormones, they can never become a different sex. Now as I understand it, Deluxe's policy requires employees to address a person using pronouns reflecting the sex that the person identifies him/herself with, and not necessarily the sex they were born as … **Let me be quite clear on this. I will never ever be following this guideline.** If God created someone as a man, I will use the pronoun 'him' to refer to that person, or if God created someone as a woman, I will use the pronoun 'her' to refer to that person. Bruce Jenner was created a man. He can cut things off and do whatever procedure he wants, but he will never become a woman, and **I will never address him as such**. It is an abomination to the God that created this universe.

Ex. 10. (Emphasis added.)

22.     Ms. Ott consulted with Kimberly Pettengill, Employee Relations Manager, regarding Mr. Brennan's refusal to complete the training and stated intent not to abide by Deluxe policy concerning non-discrimination and non-harassment of transgender employees. Ms. Pettengill subsequently consulted with Mary Budge, in-house attorney for Deluxe, about Mr. Brennan's refusal to complete the training. Ex. 4 (Pettengill Dep. 17:24 – 20:03).

23.     Deluxe concluded that it was not required to excuse Mr. Brennan from the requirement of completing the Training, because the Training did not require him to change his religious beliefs. Moreover, Deluxe concluded that excusing Mr. Brennan from completing the Training would have violated its ongoing obligations under the Consent Decree. Ex. 4 (Pettengill Dep. 20:09-24).

24.    On July 14, 2017, Deluxe, via email from Petra Ott, informed Mr. Brennan of its decision

that he would not be excused from the requirement to complete the Training. Ex. 10; Petra

Ott Dep. 27:10-18 (Ex. 11).

25.    Mr. Brennan never completed the Training and as a result his salary was reduced by 1%

effective approximately March 2018. Ex. 1, ¶ 12.

**D.  Mr. Brennan's Disciplinary Record with Deluxe**

26.    On August 26, 2016, ten months **before** Mr. Brennan refused to complete the training, Mr.

Vain issued Mr. Brennan a disciplinary action for "failure to perform duties as assigned."

The disciplinary action stated that "failure to be able to meet this requirement will result in

termination." Brennan Disciplinary Action (Exhibit 12) (Brennan Dep. Ex. 10).

27.    On August 28, 2016, Mr. Brennan complained about Mr. Vain to Kathleen Strakes, former

owner of Payce, alleging that Mr. Vain was targeting him with disciplinary action because

he had told Mr. Vain that he would not perform work on "illegal OEM software."

According to Mr. Brennan, Mr. Vain had improperly ordered another employee to install

such software on a Payce computer server. Brennan email to Strakes, dated August 28,

2016 (Exhibit 13) (Brennan Dep. Ex. 11).

28.    On March 29, 2018, Mr. Vain gave Mr. Brennan another disciplinary action for

unsatisfactory performance. Brennan Formal Warning (Ex. 14) (Brennan Dep. Ex. 16).

29.    On April 4, 2018, Mr. Brennan made a complaint about the second disciplinary action to

Wendi Arnston, Human Resources Manager, accusing Mr. Vain of "holding a grudge" due

to Mr. Brennan's "pointing out to [their] former manager (Josh Lindenmuth) that [Mr.

Vain] was having extended personal conversations during non-break periods…" and "for

the time [Mr. Brennan] confronted him about asking Mark Crist to illegally install OEM

software on another machine." Brennan Email to Arnston, dated April 4, 2018 (Exhibit 15) (Arnston Dep. Ex. 4 (excerpted)).

30.  On April 20, 2018, based upon Mr. Vain's request and recommendation, Deluxe terminated Mr. Brennan's employment due to performance issues. Mr. Vain was the sole decision-maker in the termination of Mr. Brennan. Brennan Termination (Exhibit 16) (Brennan Dep. Ex. 18 (excerpted)); Mark Vain Dep. 70:20 – 71:14 (Ex. 17); Ex. 7 (Wendy Arnston Dep. 54:21 – 56:19).

31.  Nowhere in the record, including in the Complaint or in his Deposition, has Mr. Brennan argued that Mr. Vain's actions were motivated by Mr. Brennan's failure to complete the Training and his request to be exempted from so doing. Rather, Mr. Brennan has argued that Mr. Vain acted out of motives unrelated to the facts of this case. Ex. 1; Ex. 13; Ex. 15; Ex. 2 (Brennan Dep. 173:15 – 174:16, 176:10 – 177:02).

32.  Ms. Pettengill, Julie Loosbrock (Chief Human Resources Officer), and Ms. Ott were not involved in the decision to terminate Mr. Brennan's employment. Ex. 4 (Pettengill Dep. 25:2-21; Ex. 6 (Loosbrock Dep. 51:18 – 53:14); Ex. 11 (Ott Dep. 21:7 – 23:11).

33.  Deluxe did not consider Mr. Brennan's refusal to complete the Training in its decision to terminate Mr. Brennan's employment. Ex. 7 (Arnston Dep. 64:20 – 65:19); Ex. 17 (Vain Dep. 82:2-20).

**E.  Mr. Brennan's Allegations against Deluxe**

34.  Mr. Brennan filed EEOC Charge No. 531-2018-01223 alleging religious discrimination on February 5, 2018 and received a Notice of Right to Sue in relation to this charge on February 18, 2018. Mr. Brennan did not allege retaliation in this charge. EEOC Charge No. 531-2018-01223 and Notice of Right to Sue (Ex. 18).

10

35.     Mr. Brennan filed EEOC Charge No. 531-2018-02465 alleging retaliation and religious discrimination on May 21, 2018 and received a Notice of Right to Sue in relation to this charge on December 13, 2019. EEOC Charge No. 531-2018-02465 and Notice of Right to Sue (Ex. 19).

36.     Mr. Brennan filed a Complaint in this matter on July 11, 2018 and did not include a claim of retaliation. Ex. 1.

37.     Mr. Brennan filed Objections to Magistrate Judge David Copperthite's Order of September 21, 2020 on October 4, 2020 in which he took legal positions relevant to this Motion. Plaintiff's Objections to U.S. Magistrate Judge's Order of September 21, 2020 (Ex. 20).

## III.     <u>ARGUMENT</u>

### A.  **Standard of Review.**

Pursuant to Federal Rule of Civil Procedure 56(c), a moving party shall be entitled to judgment in its favor if "there is no issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." In deciding a motion for summary judgment, the court "must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To survive a motion for summary judgment, there must be evidence upon which the jury could reasonably find in favor of the nonmoving party; a scintilla of evidence is not enough.  *See Liberty Lobby Inc.*, 477 U.S. at 252. If the entire record could not allow a rational fact finder to find in favor of the nonmoving party, then there is no genuine issue to be resolved at trial. *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

The Court of Appeals for the Fourth Circuit has expressly recognized that trial judges have an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citation omitted). Further, in employment discrimination actions, the Court of Appeals has stated that it is not the role of the court to "sit as a super-personnel department weighing the prudence of employment decisions." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2005) (citing *DeJamette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)).

**B.  Elements of a Religious Discrimination – Failure to Accommodate Claim.**

To establish a *prima facie* failure-to-accommodate claim, a plaintiff must show (1) he has a bona fide religious belief or practice that conflicts with an employment requirement and (2) the need for an accommodation of that religious belief or practice served as a motivating factor in the employer's adverse employment action. *Abeles v. Metropolitan Washington Airports Authority*, 676 Fed. Appx. 170, 176 (4th Cir. 2017) (citing *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996) and *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015)).

If the employee establishes a *prima facie* case, the burden then shifts to the employer to show that it could not reasonably accommodate the plaintiff's request without undue hardship. *E.E.OC. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (quoting *Chalmers*, 101 F.3d at 1019); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To satisfy its burden, the employer must demonstrate either (1) that it provided the plaintiff with a reasonable accommodation for his or her religious observances or (2) that such accommodation was not provided because it would have caused an undue hardship. *Firestone*, 515 F.3d at 312 (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 67 (1986)). An "undue hardship" exists when it

would result in "more than a de minimis cost" to the employer. *Id. See also Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977).

### C. Deluxe is Entitled to Summary Judgment on Plaintiff's Count of Failure to Accommodate because Plaintiff's Request Constituted an Undue Hardship.

As noted above, if an employer can establish that a plaintiff's accommodation request created more than a "de minimis" cost to the employer, the employer need not grant the request. *Hardison*, 432 U.S. at 84. Courts have held accommodation requests that require a violation of law exceed the "de minimis" cost and constitute an undue hardship. In *Baltgalvis v. Newport News Shipbuilding Inc.*, the U.S. District Court for the Eastern District of Virginia considered whether an employer was required to make a religious accommodation for an employee's request not to provide his social security number at the time of hire based on his religious beliefs. *Baltgalvis*, 132 F. Supp. 2d 414 (E.D.Va. 2001). The court granted the defendants' motion for summary judgment on two grounds. First, the court concluded that because the requirement to provide a social security number was a legal requirement established by the Internal Revenue Service, the requirement was "imposed by federal law and merely implemented" by the employer, and therefore not an adverse action taken by employer. *Baltgalvis*, 132 F. Supp. 2d, at 418-19 (citing *Seaworth v. Pearson*, 203 F.3d 1056 (8th Cir. 2000)). The court also held that the request constituted an undue hardship, since "the burden of applying for a waiver of the IRC's statutory penalty provision is also more than de minimis and therefore, constitutes an undue hardship for [employer] as a matter of law." *Baltgalvis*, 132 F. Supp. 2d, at 418-19; *see also Seaworth*, 203 F.3d at 1057 ("Even if a waiver [of the social security number requirement] could be obtained, we think that the expense and trouble incident to applying for it imposes a hardship that is more than de minimis, as a matter of law.") (internal citation omitted); *Sutton v. Providence St. Joseph Medical Center*, 193 F.3d 826, 830 (9th

Cir. 1999) (holding that "employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal or state law.").

The Supreme Court applied a similar rationale in *Trans World Airlines, Inc. v. Hardison*, in which an employee sought a religious accommodation to be off work on Saturdays inconsistent with his employer and union's collectively bargaining seniority system. 432 U.S. 63. In rejecting the argument that "statutory obligation to accommodate religious needs takes precedence over both the collective-bargaining contract and the seniority rights…," the Supreme Court held "that neither a collective-bargaining contract nor a seniority system may be employed to violate the statute, but we do not believe that the duty to accommodate requires TWA to take steps inconsistent with the otherwise valid agreement." *Id.* at 79. The Supreme Court noted that "[i]t would be anomalous to conclude that by 'reasonable accommodation' Congress meant that an employer must deny the shift and job preference of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others, and we conclude that Title VII does not require an employer to go that far." *Id.* at 81; *see also Firestone*, 515 F.3d at 317 (holding that Title VII does not require violation of collective bargaining agreement to grant accommodation request); *Harrell v. Donahue*, 638 F.3d 975, 980 (8th Cir. 2011) ("The accommodation requested by Harrell that he be given every Saturday as a scheduled day off would have violated the CBA, and the USPS was therefore not required under Title VII to grant Harrell's request."); *U.S. v. Board of Educ. for School Dist. of Philadelphia*, 911 F.2d 882, 891 (3rd Cir. 1990) ("If, as held in *Hardison*, it is an undue hardship on an employer to require it to violate its collective bargaining agreement by exposing its senior employees to weekend work, we think it follows a fortiori that it would be an undue hardship to require a school board to violate an apparently valid criminal statute…").

In *US Airways, Inc. v. Barnett*, the Supreme Court considered whether, within the context of the Americans with Disabilities Act, a disabled employee was entitled to a transfer as a reasonable accommodation that would violate the employer's seniority system, which was not collectively bargained. 535 U.S. 391 (2002). In finding for U.S. Airways, the Supreme Court expanded its holding in *Hardison*, holding that its rationale also applies to cases of employer-mandated seniority systems outside of the collective bargaining context, and that requests to deviate from such established employer policies will be an undue hardship absent "special circumstances." 535 U.S. 391, 403-06 (2002) (citing *Hardison*, 432 U.S. at 79-80). In so holding, the Court noted that a seniority system "provides important employee benefits by creating, and fulfilling, employee expectations of fair, uniform treatment" and "an element of due process" by limiting "unfairness in personnel decisions." *Id.* at 404-05. The Court noted that imposing a complex, case-specific accommodation decision by management in place of the "more uniform, impersonal operation" of standard rules "might well undermine the employees' expectations of consistent, uniform treatment…" *Id.*

The holdings of *Baltgalvis*, *Hardison*, and similar cases make clear that Mr. Brennan's request to be excused from completing the Training constituted an undue hardship on Deluxe. Like the defendants in *Baltgalvis* and *Hardison*, Deluxe had legal obligations, to include those under the Consent Decree, which it simply could not ignore. The Consent Decree was a court order that required specific actions by Deluxe to comply. Statement of Facts ("SOF") ¶¶ 4 – 17. If Deluxe had violated its terms, which it would have done if it had exempted Mr. Brennan from the requirement to complete the Training, it would have faced legal jeopardy with the United States District Court for the District of Minnesota, as well as conflict with the EEOC. *See, e.g., Shillitani*

*v. U.S*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.") (internal citations omitted).

This conclusion is further supported when one considers the broader legal framework regarding the issue of harassment and discrimination against transgender persons. Mr. Brennan worked for Deluxe in Maryland. Since 2014, Maryland law has explicitly protected employees against discrimination and harassment based upon gender identity. Md. Code § 20-602, 606.[4]

EEOC guidance also supports Deluxe's decision in relation to Mr. Brennan's request for accommodation.[5] Section 12 ("Religious Discrimination") of the EEOC's Compliance Manual states that an employer need not excuse an employee from training that provides information on how to comply with its nondiscrimination policies. The Compliance Manual lays out an example of undue hardship which is strikingly similar to the facts of this case:

> 14. What if an employee objects on religious grounds to an employer-sponsored program?
>
> Some private employers choose to express their own religious beliefs or practices in the workplace, and they are entitled to do so. However, if an employer holds religious services or programs or includes prayer in business meetings, Title VII requires that the employer accommodate an employee who asks to be excused for religious reasons, absent a showing of undue hardship. Similarly, an employer is required to excuse an employee from compulsory personal or professional development training that conflicts with the employee's sincerely held religious beliefs or practices, unless doing so would pose an undue hardship. **It would be an undue hardship to excuse an employee from training, for example, where the training provides information on how to perform the job, or how to comply with equal employment opportunity obligations, or on other workplace policies, procedures, or legal requirements**.

---

[4] Federal law under Title VII is now fully in accord with Maryland law based upon the Supreme Court's ruling in *Bostock v. Clayton County Georgia*, 140 S. Ct. 1731 (2020), when the Court held that Title VII's prohibition against discrimination and harassment based upon one's sex includes gender identity and sexual orientation.

[5] This version of the EEOC Compliance Manual was issued on July 22, 2008 and was in place during the relevant time.

Ex. 9, § C, ¶ 7 (emphasis added).

In this case, Deluxe added the questions at issue regarding the treatment of transgender employees specifically to comply with the requirements of the Consent Decree. SOF ¶¶ 4 – 16. These questions were directly related to remedying discrimination against transgender employees, as prohibited by Maryland law, and in full accord with the guidance issued by the EEOC. This context further supports Deluxe's position that violating the Consent Decree by excusing Mr. Brennan from completing the Training would constitute an undue hardship.

The Supreme Court's rationale in *Barnett* also supports Deluxe's decision, because Deluxe required all employees to complete the Training; the Training generally covered EEO topics of great importance, including the prevention of harassment, discrimination, and retaliation; and Deluxe imposed the 1% salary reduction upon **any** employee who failed to complete it. SOF ¶¶ 13, 16. As noted above, the Supreme Court in *Barnett* held that, in the context of a request for accommodation, deviation from a clearly established, uniformly applied work rule would create an undue hardship absent special circumstances. *Barnett*, 535 U.S. at 404-406. In this case, there is no factual dispute about whether Deluxe uniformly applied its policy mandating the Training uniformly. SOF ¶ 16. The factors present in *Barnett*, namely the "important employee benefits by creating, and fulfilling, employee expectations of fair, uniform treatment," would be undermined if Deluxe were required to deviate from its requirement that all employees complete the Training, the purpose of which was to further "fair and uniform treatment" of Deluxe employees without regard to protected classes. *Barnett*, 535 U.S. at 404-405.

The holdings in *Baltgalvis*, *Hardison*, and *Barnett*, the requirements of the Consent Decree, the protections afforded to employees based upon gender identity under Maryland law, and the EEOC's guidance on this issue squarely support the conclusion that that Mr. Brennan's request to

17

be excused from completing the Training constituted an under hardship for Deluxe. As a result, Deluxe is entitled to summary judgment on Mr. Brennan's religious accommodation claim.

### D. Plaintiff Cannot Establish a *Prima Facie* Case of Failure to Accommodate in Relation to his Termination.

As noted above, to establish a *prima facie* case, Plaintiff must demonstrate that (1) he had a bona fide religious belief or practice that conflicts with an employment requirement and (2) the need for an accommodation of that religious belief or practice served as a motivating factor in the employer's adverse employment action. *Abeles v. Metropolitan Washington Airports Authority*, 676 Fed. Appx. at 176. Courts in the Fourth Circuit, including the Court of Appeals, have found that a plaintiff has met the second element of the *prima facie* case when the plaintiff was disciplined for the reason of failing to perform the **specific** employment requirement for which he requested accommodation. *See, e.g., U.S. Equal Employment Opportunity Commission v. Consol Energy, Inc.*, 860 F.3d 131, 143 (upholding verdict finding that denial of accommodation resulted in constructive discharge); *E.E.O.C. v. Ithaca Industries, Inc.*, 849 F.2d 116, 117 (4th Cir. 1988) (finding plaintiff made *prima facie* case when demonstrating that he was discharged for failing to work on sabbath); *Batson v. Branch Banking and Trust Co.*, 2012 WL 4479970, *5 (D. Md. September 25, 2012) (finding employee made *prima facie* case when demonstrating that employer terminated her due her inability to work on Saturdays due to her religious beliefs); *Redmon v. Flexsol Packaging Corporation*, 2020 WL 967619, *7 (W.D.N.C. February 27, 2020) (plaintiff demonstrated he was terminated for failing to work on Sunday).

In this case, however, Plaintiff, without legal basis, is proposing an interpretation of the failure to accommodate claim that is akin to the *McDonnell Douglas* burden shifting framework for a disparate treatment or retaliation claim. 411 U.S. 792; *see also, e.g., Waag v. Sotera Defense Solutions, Inc.*, 857 F.3d 179, 191-92 (4th Cir. 2017) (applying *McDonnell Douglas* framework in

retaliation context). For instance, Plaintiff has previously claimed in this case that Mr. Vain's stated reason for terminating him is pretextual, and that the actual reason is animus toward his request for accommodation. Ex. 21, ¶ 17.[6]

By attempting to include an evaluation of pretext and animus in a failure to accommodate case, Mr. Brennan is impermissibly attempting to bootstrap a claim of discrimination or retaliation into this case. The Court, however, granted Deluxe's Motion to Dismiss regarding Plaintiff's disparate treatment claim, and Plaintiff has not filed a retaliation claim in this case.

Mr. Brennan filed an EEOC charge claiming retaliation, for which the Notice of Right to Sue was issued on December 13, 2019, giving him until March 12, 2020 to attempt to add a claim of retaliation to his Complaint, which he did not do. Ex. 18, Ex. 19. The Court of Appeals has held that receipt of a Notice of Right to Sue creates a 90-day statute of limitations to file a claim under the respective charge. *Watts-Means v. Prince George's Family Crisis Center*, 7 F.3d 40, 42 (4th Cir. 1993). Mr. Brennan is now precluded from adding a claim of retaliation to the Complaint, and the Court should not apply the *McDonnell Douglas* framework and permit Plaintiff to turn his failure to accommodate claim into a discrimination or retaliation claim.

However, even if the Court were to apply the *McDonnell Douglas* burden-shifting analysis, the record provides no evidence to support any assertion by Plaintiff that Deluxe's stated reason for his termination is pretextual. Plaintiff offers no direct evidence linking his request to be excused from the Training to Deluxe's decision to terminate his employment. Rather, the record

---

[6] In his Objections, Plaintiff argued that "Plaintiff is entitled to obtain documents necessary to assist him in claiming that the termination was part of Defendant's failure to accommodate claim, and that the asserted reasons for his termination, three months after Plaintiff's pay was reduced, were a pretext, and that the real reason Plaintiff was terminated was on account of his failure to complete the Ethics Compliance Course." Ex. 21, ¶ 17.

demonstrates that Mark Vain, Mr. Brennan's immediate supervisor, decided to terminate Mr. Brennan's employment for a legitimate, non-discriminatory reason, namely poor performance. SOF ¶¶ 26, 28, 30. Mr. Vain and Ms. Arnston, the Human Resources manager to whom Mr. Vain recommended Plaintiff's termination, testified that Mr. Brennan's failure to complete the Training was not a factor in his termination. SOF ¶ 33.  Ms. Ott, Ms. Pettengill, and Ms. Loosbrock (the corporate Human Resources personnel involved in handling Mr. Brennan's refusal to complete the Training) testified that they were not involved in the termination decision. SOF ¶ 32.

Moreover, Mr. Vain first disciplined Mr. Brennan in August 2016, nine months before Mr. Brennan first expressed any objection to completing the Training. SOF ¶¶ 19, 26. Mr. Vain clearly perceived that Mr. Brennan had significant performance problems long before Mr. Brennan objected to completing the Training, which demonstrates that Mr. Vain's decision to terminate his employment for poor performance had nothing to do with Mr. Brennan's request for an accommodation. Furthermore, after receiving the disciplinary action in 2016, Mr. Brennan complained to management that Mr. Vain was targeting him for termination because he reported that Mr. Vain had directed a coworker to download unlicensed software onto the Deluxe server. SOF ¶ 27. After receiving the disciplinary action in March 2018, Mr. Brennan again complained to Human Resources, stating that Mr. Vain was targeting him due to "grudges" he held against Mr. Brennan for his prior complaints. SOF ¶ 29. These reasons, proffered by Mr. Brennan, did not relate to his refusal to complete the Training.

The extended lapse in time of approximately ten months from Mr. Brennan's refusal to complete the Training (i.e., in May and on June 17, 2017) until Mr. Vain's decision to terminate his employment (i.e., on April 20, 2018) also squarely refutes any possible inference that Mr. Vain's termination decision bore any nexus to Mr. Brennan's request for accommodation. This

Court, citing Fourth Circuit precedent, has noted that a "lengthy time lapse" between defendant becoming aware of the protected activity and the adverse action "negates any inference that a causal connection exists between the two." *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 720 (D.Md. 2013) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) (internal citations omitted)). In determining what constitutes a lengthy time lapse, the Court of Appeals has held that a nine-month lapse between the protected activity and the adverse action is "too remote" to establish a causal connection between the two. *Booth v. Maryland*, 337 Fed. Appx. 301, 310 (4th Cir. 2009); *see also Pascual v. Lowe's Home Ctrs., Inc.*, 193 Fed. Appx. 229, 233 (4th Cir. 2006) (holding a "three- or four- month lapse" is too long to alone establish a causal connection); *Perry v. Kappos*, 489 Fed. Appx. 637, 643 (2012) (finding ten weeks to be too long a length of time to establish a causal connection absent other evidence).

This Court has also held that "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d at 720-21 (quoting *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (internal quotations omitted)); *see also Nelson v. J.C. Penney Co., Inc.*, 75 F.3d 343, 346 (8th Cir. 1996) (finding no inference of causation when there supervisors reprimanded the plaintiff before they knew of his discrimination complaints); *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2nd Cir. 2001).

In this case, Mr. Vain formally disciplined Mr. Brennan for poor performance in August 2016, **nine months before** Plaintiff informed Deluxe management that he would not complete the Training, and Deluxe terminated Mr. Brennan for poor performance **ten months after** he declared to management that he would "never ever" complete the Training and comply with the

requirements of Deluxe's policy.[7] SOF ¶¶ 28, 30. Mr. Brennan therefore cannot establish a causal connection between his request for accommodation and his termination based upon "temporal proximity" and as a result, his claim of failure to grant a reasonable accommodation relating to his termination fails as a matter of law.

## IV.   CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant Deluxe respectfully requests that the Court grant its Motion and enter judgment in favor of Deluxe as to Plaintiff's count of failure to accommodate his religious beliefs.  Defendant Deluxe also requests that the Court award it costs pursuant to Fed. R. Civ. Proc. 54 (d)(1), and award it any other relief which it deems to be fair and just.

October 28, 2020

Respectfully submitted,

*/s/ John B. Flood*
John B. Flood, MD No. 27925
Anthony M. Marcavage (*pro hac vice* motion pending)
**FLOOD LAW LLC**
1 Research Court, Suite 450
Rockville, MD 20850
Phone: (240) 599-8024
Fax: (301) 519-8001
Email: john.flood@floodlawllc.com
Email: anthony.marcavage@floodlawllc.com

*Counsel for Defendant Deluxe*

---

[7] Mr. Vain also issued Plaintiff a formal warning for poor performance in March 2018, nine months after Mr. Brennan's request for accommodation.  (Ex. 14).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **FREDERICK J. BRENNAN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | Case No. 1:18-cv-02119-ELH |
| **DELUXE CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2020, the foregoing was served by the Court's ECF/electronic filing system on the following person:

> John B. Stolarz, Esq.
> THE STOLARZ LAW FIRM
> 6509 York Road
> Baltimore, MD 21212
> Tel: (410) 532-7200
> Fax: (410) 372-0529
> stolarz@verizon.net
>
> *Counsel for Plaintiff*

*/s/ John B. Flood*
John B. Flood, MD No. 27925